No. 2495.—SATTERFIELD *v.* SPURLOCK; SPURLOCK *v.* SATTERFIELD; and SATTERFIELD *v.* SPURLOCK; cumulated.

Where a sale of land and slaves was made before emancipation, and notes were executed for the price, and the purchaser afterwards reconveys or retrocedes to the vendor a portion of the slaves at a fixed price, and a credit is given to the purchaser on a particular obligation of his, given to the vendor as a part of the price of the sale, the vendor is bound by the act, although emancipation had taken place before it was passed. The vendor, having agreed to and accepted the retrocession, cannot afterwards invoke its immorality and nullity to avoid its effect.

In a suit to enforce a contract founded on a mixed consideration, part land and part slaves, if the evidence fails to show what portion is for land and what for slaves, the case will be · remanded for the purpose of ascertaining by evidence the relative proportions of each.

APPEAL from the parish of Avoyelles—*Edwards,* J.   *J. H. Overton* for plaintiff and appellee.   *A. B. Irion & E. North Cullom* for defendant and appellant.

WYLY, J.   On eighth October, 1857, Satterfield sold to Spurlock certain lands and movables, together with sixty slaves, in the parish of Avoyelles, for the price of one hundred and sixty-five thousand six hundred dollars, payable in ten equal annual installments, evidenced by notes for sixteen thousand five hundred and sixty dollars, each maturing respectively on eighteenth May, 1859, 1860, 1861, 1862, 1863, 1864, 1865, 1866, 1867 and 1868; and securing the payment thereof by special mortgage on the land and slaves.

On ninth October, 1857, as additional security to the first three notes (maturing in 1859, 1860 and 1861), Spurlock executed a special mortgage, in favor of Satterfield or any holder or holders of said notes, on his plantation and forty slaves which he owned previous to said purchase; and his wife joined in said act, renouncing her tacit mortgage.

The first two notes were paid by Spurlock; but on failing to pay the third, Satterfield sued out an order of seizure and sale against all the property mortgaged, which was enjoined by Spurlock on twenty-sixth of September, 1861.

On twelfth April, 1865, Spurlock, by notarial act, reconveyed to Satterfield thirty-seven of the slaves which he had purchased from him, estimating them at thirty-six thousand three hundred and fifty dollars. He also conveyed to him movables estimated at one thousand and thirty-five dollars, making in the aggregate thirty-seven thousand three hundred and eighty-five dollars given in payment of his indebtedness to Satterfield.

This sum was expressly imputed to the payment of the third note upon which the order of seizure and sale was granted, and the balance was imputed to the other note or notes then due.

And the said Satterfield further stipulated in said notarial act, that he specially "requires and authorizes the recorder of the parish of Avoyelles to erase and cancel the amount of thirty-seven thousand three hundred and sixty-five dollars on the mortgage retained by the

sale of the eighth of October, 1857, in the act of sale of E. H. Satterfield to Thomas J. Spurlock of land and slaves; applying the said sum, first, to the payment of the *third* note, principal and interest, that is as yet due and unpaid; and then if more than sufficient to the payment of the same, to apply the remainder to the payment of the fourth, fifth, etc., notes as it will suffice." * * *

On seventh August, 1865, Satterfield obtained from the clerk of the District Court of the parish of Avoyelles a writ of provisional seizure, requiring the sheriff to seize and take into his custody "all the cotton, either baled or in the seed, found on the plantation heretofore belonging to said E. H. Satterfield and sold to said Thomas J. Spurlock; and also all the cotton found on the plantation belonging, on ninth October, 1857, to said Spurlock, and by him mortgaged to said Satterfield; and also about thirty-two bales lying at Simmsport, in this parish, as part of the crop of cotton raised on said plantations since and during the year 1861; also, all the stock attached to said plantations, and farming utensils thereupon found." * * *

Under this writ, was provisionally seized by the sheriff a lot of cotton and movables on each of the plantations, viz: the one acquired from Satterfield and the one previously owned by Spurlock.

The pleadings are quite irregular, and do not fully present the prominent questions of controversy; but as proof disclosing them has been received without objection, we will consider the questions as though regularly stated.

The important question for consideration is: Did the act of retrocession of the twelfth April, 1865, discharge the debt from Spurlock to Satterfield to the amount of thirty-seven thousand three hundred and eighty-five dollars, as stipulated in said notarial act? If it was a discharge of debt, undoubtedly the note, upon which the order of seizure and sale was obtained, has been paid, because the amount of *the giving in payment* was first specially imputed to it.

If this note was thus discharged, then the plantation and slaves mortgaged on ninth October, 1857, as additional security, ceased to be encumbered. It was only mortgaged to secure this note and the two preceding ones, which were not in suit, having been previously paid Spurlock. As a consequence, the order of seizure and sale could not be enforced against the plantation and slaves owned by Spurlock previous to his purchase from Satterfield.

It appears that Satterfield, in April, 1865, urged his debtor, Spurlock, to reconvey to him part of the slaves, desiring to remove to Texas and still to cling to the desperate fortunes of the Confederacy. In answer, Spurlock replied that he would surrender them and certain movables valued at the prices of 1861; "For which I want you to deliver me my third note and place the balance on the fourth as a credit, and authorize the recorder to erase the mortgage on my private prop-

NEW ORLEANS, DECEMBER, 1869. . 773

Satterfield v. Spurlock; Spurlock v. Satterfield; and Satterfield v. Spurlock. (Cumulated.)

erty. In event, if the negroes run off on account of your making an effort to remove them, it must be at your loss or risk. At present, they are all satisfied and doing well, and I am fearful that an effort to move them will cause trouble and loss. But at the same time, I know by right the property is yours, and therefore I will do all in my power to get them off with you." * * *

Spurlock also stated, in surrendering the slaves at that time, it would subject him to loss in his crops, having already planted, and he wished this taken into consideration. The terms of the reconveyance or retrocession were accepted by Satterfield, who informed Spurlock that: "If the negroes make their escape after I get possession of them, it will be my loss. All I ask, that they be put in line, named and delivered; as you have them in possession, you can easily do it." * * *

The agreement was carried into effect by notarial act, and the thirty-nine slaves and certain movables were given in payment of the existing indebtedness of Spurlock to Satterfield to the amount of thirty-seven thousand three hundred and eighty-five dollars, with the imputation and order for erasure of the mortgage, as heretofore stated.

Satterfield thus recovered the possession of part of the slaves which he had sold; he moved them to Texas in vain; they were emancipated, and he lost possession of them.

He now contends that the act of retrocession of twelfth April, 1865, was unlawful, and he should not be bound by the *pro tanto* discharge therein granted on the obligation of Spurlock to him. That at that time the slaves he sought so anxiously to have reconveyed to him, were already emancipated, and the giving in payment was *contra bonos mores.*

This position cannot be maintained. He cannot expect this court to relieve him from the consequences of his own immoral transaction. If, for an immoral cause, he has granted an acquittance to the amount of thirty-seven thousand three hundred and eighty-five dollars on the indebtedness of Spurlock to him, imputing it to certain notes, and requiring and authorizing the recorder to make the erasure of the mortgage as heretofore stated, he certainly cannot expect this Court to relieve him. The policy of the law is to leave the parties where their immorality has placed them. The contract was executed, *the giving in payment* was carried into effect at the urgent solicitations of Satterfield, and he will not be relieved by this Court from the consequences of his own turpitude.

The objection that the title derived by the retrocession was defective on account of the claims of the heirs of Mrs. Spurlock is of no force. Satterfield had a mortgage and vendor's privilege superior to the claims of any one; he was fully aware of the situation of the title; indeed, he was simply retaking, by consent, what he could have recovered by law had the slaves remained lawful objects of contract;

but even if the heirs of Mrs. Spurlock had valid claims to the objects retroceded, all he could do in bar of the enforcement of the terms of that contract on him, if threatened with eviction, would be to require security against the disturbance of his titles from that quarter. But we will not entertain the complaints of parties arising out of transactions reprobated by law. The retrocession of slaves was, at the time, unlawful; it was executed, and this Court will grant no relief to either party.

As to the provisional seizure, we think it issued improvidently. The products of the predial estates accruing under seizure, cannot be held by the judgment creditor after the satisfaction of the writ under which the estates were seized.

The giving in payment of the twelfth April, 1865, discharged the note on which the order of seizure and sale was granted. It does not · appear that plaintiff is the holder of the fourth note of the series, although he is of the others.

We have arrived at the conclusion that the *giving in payment* was an executed contract, extinguishing the indebtedness from Spurlock to Satterfield to the amount of thirty-seven thousand three hundred and eighty-five dollars, which sum was, by the parties, imputed to the third note, and the balance to the other notes next in order owned by the plaintiff.

The discharge of the third note, being the last incumbrance on the property owned by Spurlock prior to his purchase from Satterfield, relieved that property from the mortgage.

As to the remaining notes, after the credit arising from the giving in payment of twelfth April, 1865, we think they should be paid in proportion to the amount of the consideration thereof that was not for slaves. We cannot discover, from the record, the proportion of the consideration for slaves, and, therefore, deem it proper to remand the case to ascertain the relative amount of the slave consideration in said notes which cannot be enforced. The principle involved in Sandidge *v.* Sanderson, lately decided (21 An. 757), we deem applicable to this case.

It is therefore ordered, that the judgment of the Court below be avoided and annulled; and it is ordered that the discharge of the indebtedness of Spurlock to Satterfield to the amount of thirty-seven thousand three hundred and eighty-five dollars, resulting from the retrocession of the twelfth of April, 1865, remain undisturbed, with the imputation as stipulated by the parties; that the third note, the one that was mature when the order of seizure and sale was granted, be considered discharged; that the mortgage granted by Spurlock on ninth October, 1857, on property owned by him prior to his purchase from Satterfield, be also considered discharged; that the writ of provisional seizure be set aside at the costs of plaintiff therein; and that

the cause be remanded to ascertain the relative amount of the slave and other considerations in the remaining notes of Spurlock filed in this cause by Satterfield, with instruction that no judgment can be rendered by the Court of the first instance for the slave part of the consideration of said remaining notes.   It is further ordered that plaintiff pay costs of this appeal.

Rehearing refused.

Chief Justice Ludeling and Justice Howell absent.